UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

JOHN CARTAGENA,

                              Petitioner,

                                              14 Civ. 9303 (RWS)
              -against-                        10 Cr. 222 (RWS)

UNITED STATES OF AMERICA,                          OPINION

                              Respondent.

----------------------------------------X


A P P E A R A N C E S

Pro Se

John Cartagena
Reg. No. 63165-054
Federal Correctional Institution, Cumberland
13800 McMullen Highway SW
Cumberland, MD 21502


For the United States

PREET BHARARA
United States Attorney for the Southern District of New York
1 St. Andrew's Plaza
New York, NY 10007
By: Eli J. Mark, Esq.


1

**Sweet, D.J.**

John Cartagena ("Cartegena" or the "Petitioner") has moved the Court to vacate, set aside, or correct his 120-month prison sentence pursuant to 28 U.S.C. § 2255, based on his contention that his counsel was constitutionally ineffective during a jury trial where he was convicted of conspiracy to distribute and possess with intent to distribute narcotics and distribution and possession with intent to distribute narcotics.  Based on the conclusions set forth below, the motion is denied.

**<u>Prior Proceedings</u>**

Cartagena was charged (along with codefendant Vladimir Alexis Morillo-Vidal) with three cocaine distribution offenses in a superseding indictment filed on October 19, 2010.  (Dkt. No. 23.)  Trial commenced on November 29, 2010.  A significant portion of the government's case against Cartagena came via the testimony of John Seyfried, an admitted drug courier, who testified pursuant to a cooperation agreement with prosecutors. Seyfried testified that he had known Cartagena for 25 years and that the two were related by marriage.  (Trial Transcript, Dkt. No. 40 (the "Tr.") at 137.) He testified that in late 2009, he

2

transported 23 kilograms of cocaine from Phoenix to New York
City, but while returning the proceeds to the drugs' owners, he
discovered that some of the money was missing.  (Tr. 139.)
Seyfried testified that he had previously spoken with Cartagena
about his courier work and that he asked Cartegena to come with
him to Los Angeles for a transaction.  (Tr. 140.)  Seyfried was
concerned that the drugs' owner might be angry, and so he
"needed [Cartagena] to watch [his] back . . . , just to be there
for an extra set of eyes and ears and hands, to watch [his] back
as [he] returned the money."  (Tr. 139-40, 144.)  The two
travelled to Los Angeles to make the delivery, and Seyfried paid
Cartegena $400 for his help.  (Tr. 142-45, 259.)

Seyfried asked Cartegena for help on another transaction in
February 2010, involving picking up cocaine in Phoenix and
transporting it cross-country to New York.  (Tr. 139, 147.)  The
two flew to Phoenix, stayed at a hotel, and Seyfried rented an
RV to transport the drugs.  (Tr. 152-54.)  According to
Seyfried, they used tools and latex gloves to set up an area to
conceal the drugs, with the gloves being used to avoid leaving
fingerprints or getting drug residue on their hands.  (Tr. 159.)
According to Seyfried, they received 67 one-kilogram packages of
cocaine and stored it in the RV.  (Tr. 161-62.)

As the two drove East in the RV, they were stopped by a
Nebraska state trooper named Cory Townsend.  (Tr. 168.)

3

According to Seyfried, he and Cartagena had worked out a cover story in case they were questioned, where they were returning from skiing on a "guys' vacation" in Colorado.  (Tr. 167-68.)

Townsend testified that he pulled over the RV for a traffic violation and questioned Seyfried and Cartagena individually. (Tr. 93.)  Although each of the two stuck with the story about skiing, they identified different days when they went, with Seyfried saying they skied Saturday and Cartagena saying it was Sunday.  (Tr. 97-98.)  The two also provided different reasons for having an RV.  (Tr. 98.)  The inconsistencies led Townsend to suspect that Seyfried and Cartagena were involved in illicit activity, but both men denied that there were drugs in the RV. (Tr. 103-04.)

When asked by Townsend, Cartagena and Seyfried each consented to a search of the RV.  (Tr. 104.)  While inside the RV, Townsend discovered tool kits and found a compartment screwed shut, leading him to suspect that drugs were hidden in the vehicle.  (Tr. 106.)  He and another officer placed Cartagena and Seyfried under arrest, and a further search of the RV revealed the 67 kilograms of cocaine, hidden under a storage bin that had been screwed down.  (Tr. 106-07, 111.)

Two law enforcement agents testified regarding incriminating statements made by Cartagena after his arrest. The first, NYPD detective Billy Hotchkiss, testified that

4

Cartagena admitted that he was originally planning on flying from Arizona to New York to find an apartment for Seyfried, but Seyfried's original travelling companions backed out at the last minute, so he agreed to go along on the road trip instead.  (Tr. 278.)  The second, Drug Enforcement Administration special agent Thomas Throne, testified that Cartagena admitted to flying with Seyfried from New York to Los Angeles, transporting $250,000 in cash.  (Tr. 369.)

At trial, Cartagena did not mount a defense, instead holding the prosecution to its burden.  On December 7, 2010, the jury returned a guilty verdict on each count of the indictment and found that the drugs amounted to more than 5 kilograms of cocaine.  (Tr. 777-78.)  On January 6, 2011, Cartagena filed a motion for an acquittal, or in the alternative for a new trial, arguing that Seyfried's testimony was not credible, that the evidence presented against him was insufficient to support the jury's verdict, and that evidence regarding his trip to Los Angeles should have been excluded as irrelevant or prejudicial. (Dkt. No. 36.)  The Court denied Cartagena's motion (along with that of codefendant Vladimir Morillo-Vidal) by Opinion dated April 19, 2011.  United States v. Morillo-Vidal, No. 10 Cr. 222, 2011 WL 1496360 (Apr. 19, 2011).  Cartagena then filed two motions seeking reconsideration (See Dkt. Nos. 57 & 74), each of which were denied in turn.  United States v. Morillo-Vidal, No.

10 Cr. 222, 2011 WL 4072173 (S.D.N.Y. Sept. 13, 2011); United States v. Cartagena, No. 10 Cr. 222, 2012 WL 2958175 (S.D.N.Y. July 20, 2012).  Some of the issues addressed in these opinions overlap with those raised in the instant motion, including whether his counsel should have objected to the introduction of evidence concerning Seyfried and Cartagena's prior trip and whether counsel should have moved to suppress the cocaine as the product of an illegal search.  See Morillo-Vidal, 2011 WL 4072173, at *3 ("With regard to Defendant's first argument, Cartagena's counsel did in fact object to the introduction of evidence concerning Defendant's trip with Seyfried to deliver narcotics proceeds from a prior purchase. . . ."); Cartagena, 2012 WL 2958175, at *4 ("there was no basis for [Cartagena's] counsel to seek suppression of the evidence seized from within the motor home.").

On December 10, 2012, the Court sentenced Cartagena to a total of 120 months' imprisonment, to be followed by five years' supervised release.  (Dkt. No. 107.)  Cartagena appealed to the Second Circuit, and his conviction was affirmed on November 21, 2013.  United States v. Morillo-Vidal, 547 F. App'x 29 (2d Cir. 2013).  Cartagena filed the instant petition on November 10, 2014 (Dkt. No. 117), and the petition was marked fully submitted on April 10, 2015.  (See Dkt. No. 125.)

**Applicable Standard**

A claim of ineffective assistance of counsel fails unless the petitioner (i) overcomes a "strong presumption" that his counsel's conduct was reasonable and shows that his representation "fell below an objective standard of reasonableness" under "prevailing professional norms," and (ii) "affirmatively prove[s] prejudice," that is, shows "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-89, 694 (1984).  Only if both elements of the test are satisfied can a reviewing court overturn a conviction, and it is the petitioner's burden to establish both elements.  See id. at 687. Under the first prong of the Strickland analysis, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," bearing in mind that "[t]here are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. at 689.  The defendant's burden is to show "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting

Strickland, 466 U.S. at 687). A defendant cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate. See United States v. Sanchez, 790 F.2d 245, 253 (2d Cir. 1986); see also United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) ("Actions or omissions that might be considered sound trial strategy do not constitute ineffective assistance."). Likewise, tactical decisions concerning which witnesses to introduce, if any, are "ordinarily not viewed as a lapse in professional representation." Best, 219 F.3d at 201 (quoting United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997)).

To satisfy the prejudice prong, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Harrington, 562 US. at 104 (quoting Strickland, 466 U.S. at 693). Rather, "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Id. (quoting Strickland, 466 U.S. at 687.)

Only where both prongs of the Strickland test are satisfied can it be concluded that "counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment."

Strickland, 466 U.S. at 687.  When considering the two prongs, the Supreme Court has provided commonsense instructions, explaining that "[t]he object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id. at 697.

**The Motion Is Denied**

Cartagena raises three grounds for his claim of ineffective assistance of counsel: first, that his lawyer "failed to properly challenge the admission of testim[ony] relating to prior trips to Arizona;" second, that his lawyer "failed to Motion the court to suppress evidence derived from a warrantless search that went well beyond the definition and scope of a consentual [sic] search;" and third, that his lawyer "failed to move the court for a severance" of his trial and that of Morillo-Vidal "in light of the overwhelming prejudicial spill-over evidence."  (See Petitioner's Motion, No. 14 Civ. 9303, Dkt. No. 1 (the "Motion").)  As discussed further below, each of these contentions is without merit.

**Defense Counsel Was Not Constitutionally Ineffective for Failing to Object to Testimony Concerning "Prior Trips to Arizona"**

9

Cartagena argues that his trial counsel's failure to challenge the "admission of test[imony] relating to prior trips to Arizona" constituted ineffective assistance of counsel. (Motion at 4.)  Although it is unclear from the Motion precisely which trips Cartagena is referring to, it seems that he is challenging trial counsel's failure to challenge the admission of the details of prior trips to Arizona taken by Seyfried alone, without Cartagena's involvement.[1]  There were two trips to Phoenix taken by Seyfried in connection with a prior 2009 narcotics transaction that were explored during the examination of Seyfried.  On direct examination Seyfried testified about the first trip, in which Cartagena was not involved, when he picked up a cargo of 23 kilograms of cocaine in Phoenix and drove it to New York in 2009.  (Tr. 139)  During cross-examination, Seyfried was impeached with reference to a second prior trip to Arizona when Seyfried — also without any involvement from Cartagena — delivered the initial proceeds of that transaction to an individual in Phoenix, Arizona. (Tr. 242-43.)  There was no testimony regarding any trip by Cartagena to Arizona prior to the charged conspiracy.

---

[1] Cartagena cannot challenge that counsel was ineffective for failing to object to the inclusion of evidence relating to his initial trip with Seyfried, because his counsel did make such an objection.  See Morillo-Vidal, 2011 WL 4072173, at *3.

10

Seyfried also testified concerning a trip to Los Angeles he took with Cartagena in October 2009, during which they delivered proceeds from that earlier narcotics transaction. (Tr. 139-45). Trial counsel unsuccessfully moved pre-trial to preclude Seyfried's testimony of the prior trip to Los Angeles, and the Second Circuit affirmed that decision on appeal, holding that the testimony recounting Cartegena's involvement in transporting money to Los Angeles in October of 2009 was admissible as relevant background information, and separately admissible under both Fed. R. Evid. 404(b) and Huddleston v. United States, 485 U.S. 681, 691-92 (1988). See United States v. Cartagena, 547 F. App'x at 31. Cartagena has not challenged this holding in his Motion, nor could he.

The Second Circuit has already weighed in on this issue, declaring in a footnote to its opinion on Cartagena's direct appeal that an objection to the admissibility of Seyfried's previous transportation of cocaine to New York was "meritless." Id. at 31 n.1. Specifically, the Court held that the evidence was properly introduced by the Government because it was relevant, since "it bore negatively on Seyfried's credibility," and that it had "little potential for prejudice as it was clear that Cartagena was not involved in that act." Id. Further, the Second Circuit held that to the extent Cartagena was raising an objection under Fed R. Evid. 404(b), the objection failed

11

because Seyfried's testimony of the prior drug transaction was a prior bad act of Seyfried, not Cartagena.  Id.

If Cartagena's claim is that his trial counsel should have affirmatively erred in impeaching Seyfried with his involvement in the prior Arizona transaction, the decision to impeach falls well within the ambit of reasonable trial strategy.  See Sanders v. Superintendent, Green Haven Corr. Facility, No. 10 Civ. 1025, 2014 WL 3519127, at *8 (E.D.N.Y. July 15, 2014) (denying ineffective assistance claim based on cross examination tactics because "[e]ven if it proved counterproductive, and that is hard to say here even in hindsight, [Petitioner's] trial counsel had a clear strategy in pursuing this line of questioning. . . .").  Seyfried was the Government's sole cooperating witness relating to Cartagena and it was reasonable to elicit this impeachment evidence.  For example, the fact that in the past Seyfried had trafficked drugs without the involvement of Cartagena supported the defense argument that Seyfried was transporting the drugs in the charged conspiracy without Cartagena's involvement, even though they were travelling together in the RV.  Trial counsel repeatedly made the point in closing arguments that Seyfried was untrustworthy and that Cartagena was not aware of Seyfried's drug trafficking.

Furthermore, Cartagena has not met his burden of showing actual prejudice.  He does not attempt to explain how the

12

evidence regarding Seyfried's prior trips to Arizona was so
prejudicial that there is a "reasonable probability that, but
for counsel's unprofessional errors, the result of the
proceeding would have been different." Strickland, 466 U.S. at
693-94.  Cartagena has failed to make a showing of the requisite
prejudice is particularly striking in light of the strength of
the Government's case against him.  That evidence included: (i)
Seyfried's testimony about Cartagena's involvement in the
attempted delivery of 67 kilograms of cocaine in February 2010;
(ii) Townsend's testimony that, when questioned, Cartagena
provided a cover story about a ski trip that was internally
inconsistent and uncorroborated by the presence of any skis in
the RV (and that had been concocted in advance with Seyfried);
(iii) Cartagena's post-arrest statement admitting that the
original plan was for him to travel to New York to find an
apartment while Seyfried drove the RV to New York, which
corroborated Seyfried's account; and (iv) physical evidence,
including 67 kilograms of cocaine, latex gloves, tools, various
cellphones, and documents that further corroborated Seyfried's
testimony.  The Second Circuit noted that the testimony about
Seyfried's prior trip without Cartagena had "little potential
for prejudice as it was clear that Cartagena was not involved in
the act." Morillo-Vidal, 547 F. App'x at 31 n.1.  This

conclusion fatally undermines any argument that the evidence's admission violated the Sixth Amendment.

## Defense Counsel Was Not Constitutionally Ineffective for Failing to Move to Suppress Evidence Obtained in the Search of the RV

Cartagena has concluded that trial counsel was constitutionally ineffective because he failed to move to suppress evidence derived from the search of the RV. To show ineffective assistance based on the failure to make a suppression motion, "the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the evidence had been suppressed." United States v. Matos, 905 F.2d 30, 32 (2d Cir. 1990) (citing Kimmelman v. Morrison, 477 U.S. 365, 375-76 (1986)).  Cartagena can make no such showing.

As a preliminary matter, Fourth Amendment rights are personal and Cartagena, a passenger in the RV rented by Seyfried, did not possess protectable privacy rights in the seized narcotics. In order to determine whether a defendant possesses protectable privacy rights under the Fourth Amendment, the Supreme Court has established a two-step inquiry. First, the person challenging the search must demonstrate "a subjective expectation of privacy in the object of the challenged search" and second, the individual's subjective expectation must be one

14

that society accepts as "reasonable." See California v. Ciraolo, 476 U.S. 207, 211 (1986). "[T]he burden is on the defendant to establish that his own rights under the Fourth Amendment were violated." United States v. Paulino, 850 F.2d 93, 96 (2d Cir. 1988) (citing Rakas v. Illinois, 439 U.S. 128, 134 (1978)).

Although a person challenging a search typically can demonstrate a subjective desire to keep his or her effects private, Cartagena has failed this initial hurdle. Here, Cartagena disclaimed possession and ownership of the seized evidence, the drugs. See United States v. Pena Ontiveros, 547 F. Supp. 2d 323, 330 (S.D.N.Y. 2008) (defendants who were overnight guests in residence and neither claimed ownership of seized items from hallway trap nor showed that they knew of the existence of the trap or its contents failed to establish an expectation of privacy); United States v. Cody, 434 F. Supp. 2d 157, 167 (S.D.N.Y. 2005) (holding that refusal to claim ownership of an item or place results in a lack of standing to object to a search of that item or place); United States v. Mims, No. CRIM 3:05CR187, 2005 WL 3466553, at *7 (D. Conn. Dec. 19, 2005) (passenger that did not present any evidence of any property or possessory interest in vehicle failed to establish an actual subjective expectation of privacy in vehicle and could not challenge evidence seized from it).

Moreover, even under the second, objective prong on the inquiry, Cartagena's claim is rejected under Rakas v. Illinois, 439 U.S. 128 (1978). In Rakas, the Supreme Court held that defendants who were passengers in a car driven by the owner at the time of the search did not have a legitimate expectation of privacy in the car such that they could raise a Fourth Amendment challenge to the search of the car. Id. at 148-49.  The Court held that a "passenger qua passenger" has no reasonable expectation of privacy in a car in which he asserts neither a property interest nor a possessory interest and where he disclaims any interest in the seized object.  Id.  Here, Cartagena did not rent the RV, and has claimed no interest in or knowledge of the storage bin or the seized narcotics.  As a passenger, therefore, he did not possess a protectable Fourth Amendment privacy right in the rental RV.

Even if Cartagena had a legitimate privacy right in the RV, the evidence seized from it was properly admitted because, as this Court previously recognized, both Cartagena and Seyfried had consented to Townsend's search.  See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (consent to search is a "well settled" exception to the Fourth Amendment's warrant requirement).  Cartagena's apparent assertion that the search "went well beyond the definition and scope of a consentual search" when the officer "used tools to unscrew [the] kitchen

16

bench in the RV where he discovered" the narcotics (Motion at 5) is without merit. The standard for measuring the scope of consent under the Fourth Amendment is one of "objective reasonableness" and asks "what the typical reasonable person would have understood by the exchange" between the law enforcement agent and the person who gives consent. Florida v. Jimeno, 500 U.S. 248, 251 (1991) (holding that suspect's general consent to search his car included consent to search containers within the car that might contain drugs because suspect placed no explicit limitation on the scope of the search and was aware that the officer would be looking for drugs).  "The scope of a search is generally defined by its expressed object." Id. Thus, when a suspect is informed that an officer is searching for narcotics in a car, it is "objectively reasonable for the police to conclude that the general consent to search [petitioner's] car included consent to search containers within that car which might bear drugs," because "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container" and not "strewn across the trunk or floor of a car."  Id.

Here, both Seyfried and Cartagena consented to the search of the storage bin that contained the narcotics.  Prior to the request to consent to search the RV, Officer Townsend stated to each of them that their trip was "unusual" and that Phoenix is a

17

"transportation hub for narcotics." (Tr. 103-04.) Townsend then asked if there were any narcotics or other contraband in the RV, and Seyfried and Cartagena each answered in the negative. (Tr. 104.) A reasonable person would know that Townsend's requested search would extend beyond the surfaces of the vehicle's interior and "necessarily included the hidden compartment under the kitchen bench, which one could reasonably think might, and in fact did, contain drugs." United States v. Saucedo, 688 F.3d 863, 866-68 (7th Cir. 2012) (officer did not exceed the scope of defendant's general consent to search tractor-trailer by using a flashlight and screwdriver to remove screws holding the molding in place that covered a hidden unlocked compartment in the tractor); accord Jimeno, 500 U.S. at 251. Therefore, because Cartagena did not limit the search to exclude any portion of the RV, he agreed to permit a search of any compartments or containers therein that might contain drugs, including the kitchen bench storage bin where the cocaine was ultimately found.

Cartagena's assertion that the officers exceeded the scope of his consent because Townsend used a screwdriver to open the storage bin is without merit. Courts have routinely permitted officers to search for and open hidden compartments that do not cause structural damage to property. See, e.g., Saucedo, 688 F.3d at 867 (upholding search of a hidden compartment that used

18

screwdriver to remove screws to unlock compartment); United
States v. Torres, 32 F.3d 225, 231-32 (7th Cir. 1994) (upholding
search where officer used screwdriver to release six screws and
allow removal of the cover of a wooden compartment; United
States v. Garcia, 604 F.3d 186, 189-91 (5th Cir. 2010)
(upholding search of truck cab where officers used screwdriver
to remove screws securing speaker cover as within the scope of
consent to search the truck and trailer).  Here, Cartagena has
not alleged that the officers intentionally inflicted any damage
on the RV, nor was any evidence offered demonstrating that the
unscrewing of two screws caused any damage. Therefore,
Cartagena's consent to search the RV could reasonably have been
interpreted to include the removal of the two screws and search
of the hidden compartment, and an objection by trial counsel to
the admission of the evidence of this search would have been
without merit.  As has previously been held in this case,
"because Defendant and Seyfried consented to a search of the
motor home in which he was arrested, there was no basis for his
counsel to seek suppression of the evidence seized from within
the motor home."  Morillo-Vidal, 2011 WL 4072173, at *3.


**Defense Counsel Was Not Constitutionally Ineffective for Failing
to Move to Sever His Trial from a Co-Conspirator**

19

Lastly, Cartagena contends that trial counsel was constitutionally ineffective for failing to move to sever his trial from his co-defendant and co-conspirator, Vladimir Morillo-Vidal. Morillo-Vidal was charged with and convicted of attempting to receive approximately 47 kilograms of cocaine that were initially transported by Seyfried and Cartagena from Phoenix, Arizona. A motion to sever would have been without merit.

Joinder of multiple defendants in a single indictment is appropriate when the defendant's criminal acts are "unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." United States v. Cervone, 907 F.2d 332, 341 (2d Cir. 1990). A motion to sever should only be granted when there is a "serious risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). As a result, "differing levels of culpability and proof are inevitable in any multi-defendant trial and standing alone are insufficient grounds for separate trials." United States v. Scapra, 913 F.2d 993, 1015 (2d Cir. 1990); see also United States v. Losascio, 6 F.3d 924, 947 (2d Cir. 1993) ("[J]oint trials involving defendants who are only marginally involved

20

alongside those heavily involved are constitutionally
permissible.").[2]

Cartagena does not appear to contest that joinder with
Morillo-Vidal was proper, instead claiming that "prejudicial
spill-over evidence" prevented him from getting a fair trial.
However, Cartagena does not point to any particular evidence
that was prejudicial.  Conclusory allegations are insufficient
to support a section 2255 motion.  See Matura v. United States,
875 F. Supp. 235, 237 (S.D.N.Y. 1995) ("[a] mere conclusory
allegation is insufficient to substantiate a § 2255 motion");
Dedushaj v. Graham, No. 07 Civ. 5401, 2008 WL 4858242, at *2
(S.D.N.Y. Nov. 7, 2008) ("Self-serving conclusory allegations []
are insufficient to establish ineffective assistance of
counsel.").  The mere fact that there were different levels of
proof as to each defendant is plainly insufficient to meet the
high burden necessary to sever.  Moreover, the very structure of
the trial, which focused first on Cartagena's role in the
initial transportation of the cocaine and then on Morillo's role
in the attempted receipt of that cocaine in New York,
distinguished between the conspirators' actions and minimized

---

[2] Although Cartagena might not have known Morillo-Vidal, there was testimony
relevant to both defendants offered at trial, including the testimony of
Seyfried. For example, in denying Morillo-Vidal's motion for a new trial the
Court, in part, relied on the testimony of Seyfried who "provided significant
background information concerning the narcotics conspiracy, including
providing the names and roles of various other players involved." (Morillo-
Vidal, 2011 WL 1496360, at *4.)

the risk of any potential spillover prejudice.  Cartagena has failed to make a showing that his trial counsel's performance was deficient.

## **Conclusion**

For the reasons stated above, Petitioner's motion to vacate, set aside, or correct his sentence is denied.

It is so ordered.

New York, NY
September 25, 2015

ROBERT W. SWEET
U.S.D.J.